UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
NORMAN MOREY,

                Plaintiff,

-against-                               **COMPLAINT**

SOMERS CENTRAL SCHOOL DISTRICT,    **JURY TRIAL DEMANDED**
JOANNE MARIEN, Superintendent of Schools,
KENNETH CROWLEY, Assistant Superintendent    **06 CIV. 1877**
for Business, sued in their individual capacities,

                Defendants.
------------------------------------------------------------X    **JUDGE CONNER**

By and through his counsel, Bergstein & Ullrich LLP, plaintiff NORMAN MOREY complains of defendants as follows:

**I.    INTRODUCTION**

1. Plaintiff Norman Morey brings suit to redress the violation of his rights under the First and Fourteenth Amendments of the United States Constitution, as made actionable by 42 U.S.C. § 1983.

**II.    PARTIES**

2. Plaintiff resides in the County of Dutchess, State of New York, within this judicial district.

3. Defendant Somers Central School District ("the District") is a public School District organized pursuant to the laws of the State of New York. It may sue and be sued.

4. At all relevant times, defendant Joanne Marien was the District's Superintendent of Schools. Her actions in this matter were taken under color of State law.

5. At all relevant times defendant Kenneth Crowley was the District's Assistant

Superintendent for Business. His actions in this matter were taken under color of State law.

### III.   JURISDICTION

6. This Honorable Court has jurisdiction over this action pursuant to 28 U.S.C. secs. 1331, 1343 (3) and (4) and 1367 and 42 U.S.C. secs 1983 and 1988.

### IV.   FACTUAL AVERMENTS

7. Plaintiff commenced employment with the District in 1984 as a custodian. Subsequently, he was promoted to Head Custodian at the Elementary School, Intermediate School and the High School. He served as Head Custodian of the High School from 1996 until his termination in January 2004.

8. From 1988 to July 2002, with the exception of a three-year hiatus, plaintiff served as Union President of the Somers School Related Personnel, which represented the District's custodial, maintenance and para-professional staff. As Union President, plaintiff negotiated contracts on behalf of the union and otherwise vigorously advocated on behalf of the union membership with the School District's administration, often to the displeasure of the administration.

9. In May 2003, plaintiff was summoned to the High School gymnasium. Once there, he observed loose asbestos on the gymnasium floor, which had apparently dislodged from frayed pipe joints near the ceiling. Plaintiff thoroughly soaked the material to safeguard against any fragments becoming airborne. He then telephoned his supervisor, John Ness, Superintendent of Buildings & Grounds. Plaintiff advised Ness of the loose asbestos and possible contamination of the gymnasium, urging him to evacuate the gym and have it properly tested. Ness told plaintiff that he had not yet finished eating his lunch and not to do anything other than clean up the loose

material until he could get to the gym. Plaintiff did as he was directed. However, when Ness finally arrived, plaintiff reiterated his concerns about leaving the gym open and the need to have it tested for possible contamination, as the situation posed serious health and safety risks to students and staff. Plaintiff expressed his concern that any dislodged asbestos needed to be properly removed and the piping needed to be properly repaired and/or encapsulated, as required by the Asbestos Hazard Emergency Hazard Act ("AHERA"), a federal law regulating the identification and abatement of asbestos in school buildings. Ness declined to take any immediate action, advising plaintiff not to make a "big deal" out of the matter and that he would speak to Kenneth Crowley. Shortly thereafter, Crowley informed plaintiff that he was aware of the problem and "thanked" him for not making a bigger issue out of it.

10. Over the next three months, prior to being served with disciplinary charges by the District, plaintiff again expressed concern to Ness about the condition of the asbestos piping in the gymnasium and the serious health and safety hazard it posed to students and staff. Ness told plaintiff, in substance, that the administration was aware of his concerns and would "take care of it." However, the District failed to take remedial measures regarding the asbestos. Such measures would have been costly and necessitated alerting parents to the problem, which would likely have caused a public uproar over the threat to student, staff and public health and safety and the administration's lack of earlier notice about the problem.

11. In September 2003, Superintendent Marien served plaintiff with disciplinary charges which called for his termination. However, because those charges had not been voted on by the Board of Education pursuant to New York Education Law, the District had to rescind them. In early October, Marien presented the Board with virtually the same disciplinary charges, and the

Board rubber-stamped them.

12. The disciplinary charges alleged misconduct and/or incompetence dating back to April 2002. The charges' specifications were of two kinds: (1) allegations of various instances of "misconduct" by plaintiff toward certain subordinate custodial staff; and (2) allegations that plaintiff had either not performed, or not performed properly, certain "building checks" for which he had been paid overtime.

13. The "subordinate-based" charges were based on specifications which distorted the underlying true events and purposely excluded important contextual information, reflecting the District's bad faith in bringing the charges. For example, one specification alleged that plaintiff had "smashed cake" into the face of a subordinate in June 2002 without disclosing that the incident occurred at a post-graduation celebration and that plaintiff had previously "adopted" the subordinate – a recovering alcoholic – as an honorary member of his family, having him over to his house to celebrate holidays and birthdays for a number of years. Another specification alleged that plaintiff had used a profanity in referring to a subordinate, without disclosing that the subordinate had first used profanity toward plaintiff and behaved in an egregiously insubordinate and threatening manner. The District took no action against plaintiff's subordinate.

14. The "building check" specifications were purportedly based on "alarm activity" reports, which showed that plaintiff had not activated the building alarm on certain dates for which he had claimed to have performed building checks. However, defendants knew that plaintiff did not need to activate the "building alarm" to enter the custodial area, and Ness, who received the activity alarm reports on a monthly basis, had long been aware that plaintiff did not always activate the alarm when he performed building checks. Yet, before the disciplinary

4

charges were first proffered in September 2003, neither Ness nor any defendant had ever advised plaintiff that he should activate the alarm or otherwise indicated any concern about the matter.

15. After the District served plaintiff with the disciplinary charges, counsel for the School District, Ronald Longo, Esq., of Keane & Beane P.C., threatened to report plaintiff to the District Attorney's office for "theft of services" if he did not agree to resign. Upon information and belief, Longo's threat was sanctioned by defendants.

16. Plaintiff refused to resign and instead insisted upon a Civil Service § 75 hearing on the charges. Using a "substantial evidence" burden of proof, the Hearing Officer found plaintiff guilty of several of the charges and recommended his termination. In January 2004, the District terminated plaintiff. Upon information and belief, in recommending plaintiff's termination to the Board, defendant Marien maliciously claimed that there were things about plaintiff the Board did not know which also justified his termination. Plaintiff unsuccessfully appealed his termination to the Second Department Appellate Division.

17. After the District terminated plaintiff, defendants maliciously destroyed his personal belongings which they had previously agreed to securely maintain, including photographs, gifts from his children and an autographed hat collection.

18. During plaintiff's administrative proceeding, the issue of whether the District, in charging [and then terminating] plaintiff, was substantially motivated by a desire to retaliate against and/or silence him based on his union activity and/or his expressions of concern about the gymnasium asbestos problem, was not litigated.

19. The disciplinary charges against plaintiff and his resulting termination, were taken in retaliation for plaintiff's activity and/or speech protected by the First Amendment to the United

5

States Constitution.

20. Plaintiff's protected activity consisted of his union activism. After plaintiff was no longer Union President, and thus in a weakened position politically, defendants determined to punish him for his union advocacy and to chill others from engaging in such advocacy.

21. Plaintiff's protected speech consisted of his expressions of concern to his superiors regarding the gymnasium asbestos problem. Defendants acted to chill plaintiff and punish him for raising such concerns.

22. As set forth herein, through the actions of District officials with actual, or delegated, final policymaking authority with respect to personnel matters, plaintiff has been retaliated against in violation of his rights under the First and Fourteenth Amendment.

23. Through their malicious and reckless acts and omissions, defendants have maliciously and willfully caused plaintiff actual compensatory injuries, including lost pay, lost benefits, mental anguish, humiliation, embarrassment, and diminishment of his professional and personal reputation.

### V. CAUSES OF ACTION

24. Plaintiff incorporates paras. 1-23 as if fully restated herein.

25. Defendants have violated plaintiff's rights under the First and Fourteenth Amendments, as made actionable against these defendants pursuant to 42 U.S.C. section 1983.

### VI. PRAYER FOR RELIEF

26. WHEREFORE, plaintiff prays that this Honorable Court:

(a) empanel a jury to hear and decide this matter;

(b) award to plaintiff compensatory damages, including damages for past and future lost pay and

benefits and past and future emotional distress, against the defendants jointly and severally;

c) award to plaintiff punitive damages against the individual defendants for their egregious violations of his rights which must be punished and deterred;

(d) award to plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. section 1988, and

(e) enter any other relief justified by the law and facts.

Dated: March 7, 2006
    Chester, New York

Respectfully submitted,

Christopher D. Watkins (CW 2240)

Bergstein & Ullrich LLP
15 Railroad Ave.
Chester, New York 10918
(845) 469-1277
Attorneys for Plaintiff