UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - X

NORMAN MOREY,                          :

                Plaintiff,        :

    - against -                        :

SOMERS CENTRAL SCHOOL DISTRICT, JOANNE :
MARIEN, Superintendent of the Schools,
and KENNETH CROWLEY, Assistant         :
Superintendent for Business, sued in
their individual capacities,           :

               Defendants.   :

- - - - - - - - - - - - - - - - - - - - X

**ECF CASE**

06 Civ. 1877 (WCC)

**OPINION
AND ORDER**

**A P P E A R A N C E S :**

BERGSTEIN & ULLRICH, LLP
**Attorneys for Plaintiff**
15 Railroad Avenue
Chester, New York 10918

CHRISTOPHER D. WATKINS, ESQ.

    Of Counsel

RUTHERFORD & CHRISTIE, LLP
**Attorneys for Defendants**
300 East 42nd Street, 18th Fl.
New York, New York 10017

LEWIS R. SILVERMAN, ESQ.

    Of Counsel

**Copies E-Mailed to Counsel of Record**

**Conner, Sr. D.J.:**

Plaintiff Norman Morey brings the instant action pursuant to 42 U.S.C. § 1983 against defendants Somers Central School District (the "School District"), Joanne Marien and Kenneth Crowley (collectively, "defendants").    At all relevant times, defendant Marien was the Superintendent of Schools, and defendant Crowley was the Assistant Superintendent for Business. Plaintiff alleges that defendants terminated his employment as Head Custodian of the School District in retaliation for his past union activities and other protected speech in violation of the First and Fourteenth Amendments to the United States Constitution.[1]  Defendants contend that plaintiff's claims are barred by the doctrine of collateral estoppel, as plaintiff previously litigated whether his termination was for cause at a state disciplinary hearing and in an Article 78 proceeding.  Defendants further contend that plaintiff has failed to sufficiently plead that his alleged speech is protected under the First Amendment, and that a causal connection exists between any protected speech and the adverse employment action.  Accordingly, defendants move to dismiss the Complaint in its entirety pursuant to FED. R. CIV. P. 12(b)(6).  For the reasons that follow, defendants' motion is denied.

## BACKGROUND

On a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all of the well-pleaded facts as true and consider those facts in the light most favorable to the plaintiff.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds, Davis v. Scherer*, 468

---

[1] The First Amendment of the United States Constitution provides in relevant part that "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. CONST. amend. I.  The First Amendment applies to the states through its incorporation under the Fourteenth Amendment of the United States Constitution.  *See Nike, Inc. v. Kasky*, 539 U.S. 654, 658 (2003); *Deegan v. City of Ithaca*, 444 F.3d 135, 142 (2d Cir. 2006).

U.S. 183 (1984); *Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir. 1993); *In re AES Corp. Sec. Litig.*, 825 F. Supp. 578, 583 (S.D.N.Y. 1993) (Conner, J.).   Accordingly, the following discussion of the facts is based on the allegations in plaintiff's Complaint.

In 1984, plaintiff began working as a custodian for the School District.  (*See* Complt. ¶ 7.) In 1996, plaintiff was promoted to Head Custodian, and he held that position until his termination in January 2004.  (*See id.*)  From 1988 to July 2002, with the exception of a three-year hiatus, plaintiff served as Union President of the Somers School Related Personnel, which represented the School District's custodial, maintenance and para-professional staff.  (*See* Complt. ¶ 8.)  As Union President, he "negotiated contracts on behalf of the union and otherwise vigorously advocated on behalf of the union membership with the School District's administration, often to the displeasure of the administration."  (*See id.*)

In May 2003, while on duty as Head Custodian, plaintiff noticed loose asbestos on the High School gymnasium floor, which had apparently dislodged from ceiling pipes.  (*See* Complt. ¶ 9.) Plaintiff first soaked the dislodged material to prevent any fragments from becoming airborne.  (*See id.*)  He then notified his supervisor, John Ness, of the situation and advised him that the gymnasium should be evacuated to begin proper testing of the area.  (*See id.*)  Ness stated that "he had not yet finished eating his lunch and not to do anything other than clean up the loose material until he could get to the gym."  (*See id.*)  When Ness finally arrived, plaintiff reiterated that the gym should be evacuated and closed, as "the situation posed serious health and safety risks to students and staff." (*See id.*)  Plaintiff informed Ness that the School District was required to remove the dislodged asbestos and repair or encapsulate the piping, as required by the Asbestos Hazard Emergency Response Act.  (*See id.*)  Despite plaintiff's concerns, Ness did not take any steps to remedy the

problem and instructed plaintiff not to make the situation into a "big deal." (*See id.*) Ness assured plaintiff that he would inform Crowley of the situation, and, "[s]hortly thereafter, Crowley informed plaintiff that he was aware of the problem and 'thanked' plaintiff for not making a bigger issue out of it." (*See id.*)

Over the next three months, plaintiff continuously reiterated his concerns to Ness regarding the asbestos in the gymnasium and "the serious health and safety hazard it posed to students and staff." (*See* Complt. ¶ 10.) Ness informed plaintiff that the administration was aware of the problem and intended to remedy it. (*See id.*) Plaintiff alleges, however, that the administration failed to take any remedial action, as "[s]uch measures would have been costly and necessitated alerting parents to the problem, which would likely have caused a public uproar over the threat to student, staff and public health and safety[, as well as] the administration's lack of earlier notice about the problem." (*See id.*)

In September 2003, approximately four months after plaintiff's initial complaint regarding the asbestos in the gymnasium, Marien served plaintiff with disciplinary charges which alleged misconduct and incompetence and called for plaintiff's termination. (*See* Complt. ¶ 11.) Because the charges were not presented to the School District's Board of Education (the "Board") for approval as required under the New York Education Law, the District was forced to rescind them. (*See id.*) However, in early October 2003, after receiving the Board's approval, Marien served plaintiff with virtually the same disciplinary charges. (*See id.*)

The charges included allegations dating back to April 2002, including "(1) allegations of various instances of 'misconduct' by plaintiff toward certain subordinate custodial staff; and (2) allegations that plaintiff had either not performed, or not performed properly, certain 'building

checks' for which he had been paid overtime."  (*See* Complt. ¶ 12.)  Plaintiff alleges that "[t]he 'subordinate-based' charges were based on specifications which distorted the underlying true events and purposely excluded important contextual information, reflecting the District's bad faith in bringing the charges."[2]  (*See* Complt. ¶ 13.)  Regarding the "building check specifications," plaintiff alleges that they were purportedly based on "'alarm activity' reports, which showed that plaintiff had not activated the building alarm on certain dates for which he had claimed to have performed building checks."  (*See* Complt. ¶ 14.)  However, defendants and Ness had been aware that plaintiff did not always activate the alarm when he performed building checks, and defendants and Ness did not advise plaintiff that he should always activate the alarm when conducting the checks.  (*See id.*).

After the School District served plaintiff with the disciplinary charges, counsel for the School District threatened to report plaintiff to the district attorney's office for theft of services if he did not agree to resign.  (*See* Complt. ¶ 15.)  Plaintiff refused to resign and elected to have a hearing pursuant to § 75 of the New York Civil Service Law.[3]  (*See* Complt. ¶ 16.)  The Board referred the matter to a hearing officer on October 8, 2003.  (*See* Silverman Decl., Ex. A., p. 1.)

The hearing was held over the course of five days at the School District's administrative offices, and both the School District and plaintiff were represented by counsel.[4]  (*See id.*)  Both

---

[2] For example, plaintiff alleges that "one specification alleged that plaintiff had 'smashed cake' into the face of a subordinate in June 2002 without disclosing that the incident occurred at a post-graduation celebration" and that plaintiff and the subordinate had a friendly relationship.  (*See* Complt. ¶ 13.)

[3] Section 75 of the New York Civil Service Law affords plaintiff the right to a hearing upon stated charges prior to being "removed or otherwise subjected to any disciplinary penalty . . . ."  McKinney's N.Y. Civ. Serv. L. § 75(1).

[4] Plaintiff was represented at the administrative hearing by the same counsel as in the instant action.  (*See* Silverman Decl., Ex. A, p. 1.)

parties also called several witnesses, all of whom were subject to cross-examination. (*See generally* Silverman Decl., Ex. A.) Plaintiff alleges that during the administrative hearing, no participant, including himself, addressed whether the School District's decision to charge plaintiff was motived by a desire to retaliate against him based on his union activity or his complaints regarding the asbestos in the gymnasium. (*See* Complt. ¶ 18.)

Applying a "substantial evidence" standard, the hearing officer found plaintiff guilty of several of the School District's charges and recommended his termination to defendant Marien, who in turn recommended plaintiff's termination to the Board. (*See* Complt. ¶ 16.) Plaintiff alleges that at this time, defendant Marien stated to the Board that "there were things about plaintiff the Board did not know which also justified his termination." (*See id.*) On January 8, 2004, the School District terminated plaintiff. (*See id.*) Plaintiff alleges that after his termination, defendants "maliciously" destroyed his personal belongings, including photographs, gifts from his children and an autographed hat collection, which defendants had previously agreed to securely maintain. (*See* Complt. ¶ 17.)

Plaintiff filed an Article 78 appeal seeking review of the School District's decision to terminate him. (*See* Complt. ¶ 16.) The Appellate Division, Second Department upheld the hearing officer's findings that plaintiff committed acts of misconduct and incompetence, concluding that they were supported by substantial evidence. *See Morey v. Somers Cent. Sch. Dist.*, 24 A.D.3d 558, 559 (2nd Dep't 2005). The court also held that "[g]iven the numerous instances of misconduct and incompetence that were established, the penalty of termination must be sustained as it is not shocking to one's sense of fairness." *Id.* (citations omitted). Plaintiff now brings this action alleging that defendants terminated him in retaliation for his union activities and his statements concerning asbestos.

## DISCUSSION

### I.   <u>Standard of Review</u>

As previously stated, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all of the well-pleaded facts as true and consider those facts in the light most favorable to the plaintiff.  *See Scheuer*, 416 U.S. at 236; *see also Hertz Corp.*, 1 F.3d at 125; *In re AES Corp.*, 825 F. Supp. at 583.  On such a motion, the issue is "whether the claimant is entitled to offer evidence to support the claims."  *Scheuer*, 416 U.S. at 236.  A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Padavan v. United States*, 82 F.3d 23, 26 (2d Cir.1996) (quoting *Hughes v. Rowe*, 449 U.S. 5, 10 (1980)).  However, allegations that are so conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains, are insufficient as a matter of law.  *See Martin v. N.Y. State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir. 1978).

In assessing the legal sufficiency of a claim, the Court may consider those facts alleged in documents that are "integral" to plaintiff's claims, even if not explicitly incorporated by reference. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 46-48 (2d Cir. 1991); *Smart v. Goord*, 441 F. Supp. 2d 631, 637 (S.D.N.Y. 2006) ("'[W]hile courts generally do not consider matters outside the pleadings, they may consider documents attached to the pleadings, documents referenced in the pleadings, or documents that are integral to the pleadings in order to determine if a complaint should survive a 12(b)(6) motion.'") (quoting *Garcia v. Lewis*, No. 05 Civ. 1153, 2005 WL 1423253, at *3 (S.D.N.Y. June 16, 2005); *U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A.-Petrobras*, No. 98 Civ.

3099, 2001 WL 300735, at *2 (S.D.N.Y. Mar. 27, 2001) ("[T]he Court can consider documents referenced in the complaint and documents that are in the plaintiffs' possession or that the plaintiffs knew of and relied on in bringing suit.").  We may, therefore, consider the records of state administrative proceedings, *see Smart*, 441 F. Supp. 2d at 637, and any prior related court decisions. *See Hason v. Office of Prof'l Med. Conduct*, 314 F. Supp. 2d 241, 246 (S.D.N.Y. 2004) (allowing consideration of public records, including administrative decisions); *Dolan v. Roth*, 325 F. Supp. 2d 122, 128-29 (N.D.N.Y. 2004) (considering Article 78 decision in granting a motion to dismiss on preclusion grounds).[5]

## II.    Collateral Estoppel Does Not Bar Plaintiff's First Amendment Retaliation Claim

Defendants first argue that plaintiff's claim for First Amendment retaliation is barred by the doctrine of collateral estoppel.  To resolve this issue, we begin by noting that factual findings from a state administrative hearing held pursuant to New York Civil Service Law § 75 and subsequently reviewed for substantial evidence in an Article 78 proceeding can serve as the basis for issue preclusion in federal court.  The law is clear that "in federal actions based on 42 U.S.C. § 1983, state administrative fact-finding is given the same preclusive effect as it would receive in courts of the same state[,]" *Burkybile v. Bd. of Educ. of the Hastings-on-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 310, 312 (2d Cir. 2005) (citing *Ryan v. N.Y. Tel. Co.*, 62 N.Y.2d 494, 501-02, 478 N.Y.S.2d 823, 825-27 (1984); *see also Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986),  and in New York,

---

[5] In deciding defendants' motion, we consider the record of the prior state administrative hearing and the Article 78 decision.  They are both referenced in plaintiff's Complaint, *see, e.g.*, Complt. ¶¶ 16, 18, and are essential to address defendants' defense under the doctrine of collateral estoppel, which defendants argue bars plaintiff's First Amendment retaliation claim.

courts extend the doctrine of collateral estoppel to the proceedings at issue in this case. *See In re Wachtmeister*, 270 A.D.2d 556, 557 (3d Dep't 2000) (recognizing that proceedings brought pursuant to New York Civil Service Law § 75 may serve as the basis for collateral estoppel); *DeCintio v. Westchester County Med. Ctr.*, 821 F.2d 111, 118 (2d Cir. 1987) (the same); *Verbeek v. Teller*, 158 F. Supp. 2d 267, 277 (E.D.N.Y. 2001) (the same); *Hoffman, Jr. v. County of Delaware*, 41 F. Supp. 2d 195, 207-08 (N.D.N.Y. 1999) (applying issue preclusion to factual findings of a proceeding brought pursuant to New York Civil Service Law § 75 which were later reviewed by New York courts), *aff'd* 205 F.3d 1323 (2d Cir. 2000); *see also Yan Yam Koo v. NYC Dep't of Bldgs.*, No. 04 Civ. 9628, 2006 WL 963883, at *4 (S.D.N.Y. Apr. 12, 2006) (applying collateral estoppel to a finding by the New York State Division of Human Rights which was later reviewed in an Article 78 proceeding). Thus, we must proceed to determine whether the otherwise-applicable preclusion rules are satisfied.

Under New York law, collateral estoppel "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party . . . whether or not the tribunals or causes of action are the same." *Ryan*, 62 N.Y.2d at 500. Collateral estoppel applies only if "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995). The party asserting preclusion carries the burden of establishing that the issue was actually raised and necessarily decided but, once that burden is met, the party opposing preclusion must demonstrate a lack of a full and fair opportunity to litigate. *See id.* at 869.

Defendants argue that since the gravamen of plaintiff's First Amendment retaliation claim

is whether defendants had sufficient cause to terminate plaintiff, the "claim is precluded based on the findings of cause for discharge litigated at the hearings pursuant to New York Civil Service Law § 75, and confirmed by the Second Department."  (*See* Defs. Mem. Supp. Mot. Dismiss at 9.) Plaintiff argues that while the administrative hearing determined that plaintiff committed certain acts of misconduct and should therefore be terminated, it did not determine whether the disciplinary charges against plaintiff were filed for retaliatory purposes.  (*See* Pl. Mem. Opp. Mot. Dismiss at 8.) In response, defendants contend that "[t]he issue of whether there was any improper motive or intent underlying the disciplinary charges instituted against the plaintiff was intertwined and embedded within the Hearing Officer's findings of incompetence and misconduct."  (*See* Defs. Reply Mem. Supp. Mot. Dismiss at 5.)  They concede, however, that "it does not appear the plaintiff specifically claimed retaliatory animus on the part of the District in either his Civil Service § 75 hearing, or the Article 78 review by the Second Department[.]" (*Id.*)  They maintain that plaintiff "must have asserted that his termination was unwarranted, arbitrary and capricious, and/or conducted in bad faith in order to defend himself against the disciplinary charges, and to challenge the hearing officer's decision." (*Id.*)  Therefore, defendants conclude that "the Civil Service § 75 hearing[] necessarily decided whether there were any improper motives for disciplining the plaintiff, such as retaliatory animus or intent." (*Id.*)  We disagree.

As defendants concede, the record of the administrative hearing is devoid of any evidence that the issue of retaliation was actually litigated and necessarily decided.  The words "asbestos" and "union" are not mentioned in the record, and there is nothing to suggest that any party or witness addressed these issues.  While plaintiff raised several affirmative defenses, he did not allege that

defendants acted with a retaliatory motive.[6]  Likewise, neither the hearing officer nor the Article 78 court addressed the issue of retaliation.  Accordingly, collateral estoppel is not applicable to plaintiff's First Amendment retaliation claim.  *See Burkybile*, 411 F.3d at 313 (not precluding the plaintiff's First Amendment retaliation claim because "[t]he record d[id] not reflect that any constitutional claims were raised" at the administrative proceeding); *Levich v. Liberty Cent. Sch. Dist.*, 361 F. Supp. 2d 151, 157 n.6 (S.D.N.Y. 2004) (Conner, J.) ("Collateral estoppel is not applicable to plaintiff's claim that the change in the conditions of his employment were made in retaliation for his criticism of the School District's administration[,] as that issue was not raised in the prior § 3020-a proceeding.").

Contrary to defendants' argument, plaintiff's claim for First Amendment retaliation is not precluded merely because the hearing officer decided that the School District had sufficient cause to terminate plaintiff.  "Sufficiency on that score . . . does not defeat [plaintiff's] present claim, because a plaintiff can prove First Amendment retaliation even if the measures taken by the state were otherwise justified."  *Beechwood Restorative Care Ctr. v. Leeds*, 436 F.3d 147, 152 (2d Cir. 2006).  In *Latino Officers Association v. City of New York*, for example, the defendants argued that the plaintiff's claim for First Amendment retaliation was barred by collateral estoppel because an

_____

[6] New York Civil Service Law § 75-b(2)(a) incorporates an affirmative defense of retaliation in the event that a public employee "discloses to a governmental body information: (i) regarding a violation of a law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety; or (ii) which the employee reasonably believes to be true and reasonably believes constitutes an improper governmental action."  Despite the availability of this defense, plaintiff failed to raise it.  Rather, plaintiff alleged that the School District violated federal law and acted arbitrarily and capriciously in initiating the charges and, in particular, that defendants violated his due process rights under the Fourteenth Amendment, all of which defenses were rejected by the hearing officer.  (*See* Silverman Decl., Ex. A, pp. 26-27.)

Article 78 court found that the plaintiff's termination was justified. 253 F. Supp. 2d 771, 785-86 (S.D.N.Y. 2003). The court rejected the defense and explained:

> [T]o the extent [plaintiff] raises claims in this action for First Amendment retaliation under Section 1983, this is not barred. A necessary element of this claim is that "the defendants' conduct was motivated by or substantially caused by [plaintiff's] exercise of free speech." The Article 78 court's finding that [plaintiff's] termination was rational is not inconsistent with a finding that it was motivated in some part or caused by his exercise of First Amendment rights.

*Id.* (footnote omitted); *see also Waters v. Churchill*, 511 U.S. 661, 681 (1994) (denying summary judgment where defendants "would have been justified in firing [the plaintiff] for [certain] statements" but "there remain[ed] the question whether Churchill was actually fired because of those statements, or because of something else"); *Vargas v. City of New York*, 377 F.3d 200, 206 (2d Cir. 2004) (holding that findings from an administrative hearing and an Article 78 proceeding that plaintiff engaged in misconduct and should be terminated does not necessarily subsume the question of whether the termination was made with discriminatory intent); *Colon*, 58 F.3d at 870 (holding that collateral estoppel did not bar the plaintiff's federal claims that the initiation of disciplinary charges was in retaliation for his commencement of prior lawsuits against certain prison officials, as the lawsuits were not mentioned in the Article 78 proceeding, "let alone suggest[ed] that the disciplinary proceedings against him were a response to those lawsuits").

Similarly, in *Beechwood*, the Second Circuit held that collateral estoppel did not bar litigation of the plaintiff's First Amendment retaliation claim, even though plaintiff raised retaliation as a defense and the hearing officer concluded that the claim was "'a total, complete and ridiculous fabrication . . . .'" 436 F.3d at 152-53 (quoting the administrative record). The court reasoned that the issue of retaliation was not "necessarily decided" because "[t]he charges against the [plaintiff]

11

might have been sustainable even if they were animated by bias and retaliation." *Id.* at 153.

In the present case, plaintiff did not litigate the retaliation issue, and neither the hearing officer nor the Article 78 court necessarily decided it. As the Second Circuit has made clear, the fact that plaintiff committed acts of misconduct and should therefore be terminated "does not demonstrate that the court 'actually and necessarily' decided an issue that was never presented to it, even if that issue touched, in a general sense, on the propriety of the termination." *Vargas*, 377 F.2d at 206. Indeed, plaintiff could have engaged in misconduct which justified his termination, and defendants' actions may still have been substantially motivated by plaintiff's First Amendment activity and, therefore, unlawful. *See Waters*, 511 U.S. at 681; *Beechwood*, 436 F.3d at 153*; Vargas*, 377 F.3d at 206; *Colon*, 58 F.3d at 870; *Latino Officers Ass'n*, 253 F. Supp. 2d at 785-86.

Defendants' reliance upon *Burkybile* is misplaced. In *Burkybile*, the Second Circuit afforded preclusive effect to the facts established at the plaintiff's Section 3020-a hearing, including the fact that the plaintiff committed various acts of misconduct and was terminated for just cause. 411 F.3d at 312, 313. However, the court did not hold that these factual findings precluded the plaintiff's constitutional claims for First Amendment retaliation. *See id.* at 313. As in this action, "[t]he record d[id] not reflect that any constitutional claims were raised at the Section 3020-a hearing, so [the court did] not take the[m] as decided." *Id.* Instead, the court independently addressed whether the plaintiff's First Amendment retaliation claim could survive on a motion for summary judgment. *Id.* at 313-14. After examining all of the evidence, the court dismissed the plaintiff's claim because "all of the[] factors indicate[d] good faith on the part of [the defendants] and destroy[ed] any inference of retaliatory animus." *Id.* In relying upon *Burkybile*, defendants in this case "misapprehend the difference between applying collateral estoppel and giving evidentiary weight to" the administrative

hearing. *See Roemer v. Bd. of Educ. of City Sch., Dist. of the City of N.Y.*, 290 F. Supp. 2d 329, 333 (E.D.N.Y. 2003), *aff'd*, 150 F. App'x 38, 39 (2d Cir. 2005), *cert. denied,* 127 S. Ct. 370 (2006).

Defendants also cite *Dolan v. Roth* for the proposition that plaintiff cannot "recharacteriz[e] in constitutional terms the same claims that were 'actually and necessarily decided' in prior proceedings." (*See* Defs. Reply Mem. Supp. Mot. Dismiss at 5 (quoting *Dolan v. Roth*, 170 F. App'x 743, 746 (2d Cir. 2006)).) While this is generally true, the *Roth* case is distinguishable from the present case. Unlike plaintiff in this action, the plaintiff in *Roth* repeatedly and insistently alleged in his prior proceedings that he was terminated in retaliation for his political affiliations. *See Dolan*, 325 F. Supp. 2d at 134-36. For example, in his appeal to the Civil Service, the plaintiff alleged: "What has happened is that Mr. Dolan's *political enemies* discovered his appointment and from the *retribution-infested political waters* of Columbia County comes this charge made through unnamed and unidentified 'Tax Department officials.'" *Id.* at 135 (emphasis in original). The court also emphasized that the plaintiff explicitly suggested that his federal constitutional rights were violated, in particular that "'[a] probationer *cannot be terminated for reasons* that are *prohibited* in the law or *by the Constitution* . . ., which *includes because of one's politics* . . . .'" *Id.* (emphasis in original).

Based on an extensive record containing numerous allegations of retaliatory motive, the district court held that the First Amendment retaliation claim was previously litigated in the prior proceedings. *Id.* The Second Circuit affirmed the court's conclusion, reasoning that "[a]lthough [the plaintiff] did not specifically style his arguments before the New York Supreme Court and Appellate Division as First Amendment retaliation or Equal Protection claims, he nonetheless clearly asserted his dismissal had been 'arbitrary and capricious' and that defendants had acted in 'bad faith' and

13

'pretextual[ly]' by terminating his appointment as punishment for his political affiliation and activities." *Dolan*, 170 F. App'x at 746.  This is not the case here.

In contrast to the numerous instances where the plaintiff in *Dolan v. Roth* alleged or alluded to First Amendment retaliation for his political associations, plaintiff never mentioned his union activities, his complaints regarding asbestos, or any defense or allegation of unlawful retaliation prior to this present action.  As noted, plaintiff alleged that the School District, in initiating the disciplinary charges, "acted arbitrarily and capriciously, and in violation of state and federal law[.]" *See infra* p. 10, n.6.  The hearing officer rejected plaintiff's defenses and found that plaintiff engaged in acts of misconduct and incompetence justifying his termination.  To say that the issue of First Amendment retaliation was thereby litigated would stretch the holding in *Dolan v. Roth* to its breaking point. Therefore, the doctrine of collateral estoppel does not preclude plaintiff's First Amendment retaliation claim, and, accordingly, we must consider whether plaintiff has alleged sufficient facts to establish a claim for First Amendment retaliation.[7]

---

[7] While defendants do not seek dismissal of the present case under the *Rooker-Feldman* doctrine, we are obliged to address the issue, as it is one of subject matter jurisdiction.  *See Moccio v. N.Y. State Office of Court Admin.*, 95 F.3d 195, 198 (2d Cir. 1996) ("A challenge under the *Rooker-Feldman* doctrine is for lack of subject matter jurisdiction, and may be raised at any time by either party or *sua sponte* by the court.") (internal citations omitted).  The *Rooker-Feldman* doctrine, which addresses the power of federal courts to adjudicate matters already decided by state courts, was, until recently, a subject of much confusion among the federal courts.  However, as the Second Circuit has stated:  "In *Exxon Mobil*, the Supreme Court pared back the *Rooker-Feldman* doctrine to its core, holding that it 'is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'"  *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005)); *see also Lance v. Dennis*, 126 S. Ct. 1198, 1201, 1202 (2006).

In light of the Supreme Court's decision in *Exxon Mobil*, the Second Circuit instructed courts to apply a four-part test to determine whether an action is barred pursuant to the *Rooker-Feldman*

### III.___Plaintiff's Allegations are Sufficient to State a Claim for First Amendment Retaliation

To state a claim under § 1983 for retaliation in violation of the First Amendment, plaintiff must demonstrate that: (1) his speech was constitutionally protected; (2) he suffered an adverse employment action; and (3) a causal connection exists between the protected speech and the adverse employment action. *See Washington v. County of Rockland*, 373 F.3d 310, 320 (2d Cir. 2004); *McGuire v. Warren*, 404 F. Supp. 2d 530, 536 (S.D.N.Y. 2005) (Conner, J.). Defendants do not dispute that plaintiff suffered an adverse employment action.[8]  They do, however, contend that he

_____

doctrine.  The court wrote:

> First, the federal-court plaintiff must have lost in state court.  Second, the plaintiff must "complain[] of injuries caused by [a] state-court judgment[.]"  Third, the plaintiff must "invit[e] district court review and rejection of [that] judgment[]."  Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced[.]"

*Hoblock*, 422 F.3d at 85 (citing *Exxon Mobil*, 544 U.S. at 283) (internal footnote omitted).

In the present case, plaintiff does not complain of injury caused by the Article 78 proceeding, but rather his allegations concern his former employer's motivation to initiate disciplinary charges which ultimately led to his termination.  *See Dolan*, 170 F. App'x at 745 ("Because Dolan brings suit to remedy an injury that was produced by defendants' decision to terminate him from the position of Investigator rather than by the state-court judgments in question, his claim is 'independent' within the meaning of *Hoblock*.").  "The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by *Rooker-Feldman*, of the state-court judgment." *Hoblock*, 422 F.3d at 88.  Accordingly, the *Rooker-Feldman* doctrine does not bar plaintiff's federal claim.

[8] A plaintiff sustains an adverse employment action if he or she endures a "materially adverse change" in the terms and conditions of employment.  *See Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 446 (2d Cir. 1999) (relying on *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993)).  "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or

has failed to allege sufficient facts to establish (1) that his speech was constitutionally protected and (2) that a causal connection exists between any protected speech and the adverse employment action. We disagree.

### A. Plaintiff's Statements are Constitutionally Protected

While defendants do not address whether plaintiff's past union activities are protected under the First Amendment, they argue that plaintiff's statements regarding the asbestos in the High School's gymnasium are not protected under the First Amendment because he made the statements "pursuant to his duties as a custodian." (*See* Defs. Mem. Supp. Mot. Dismiss at 10.) Defendants, to say the least, over-simplify the applicable law.

"[P]ersons do not relinquish their first amendment protections to comment on matters of public interest by becoming public employees." *Piesco v. City of New York, Dep't of Personnel*, 933 F.2d 1149, 1155 (2d Cir. 1991). Nevertheless, when playing the role of employer, the state possesses "greater leeway to control employees' speech that threatens to undermine its ability to perform its legitimate functions." *Lewis v. Cowen*, 165 F.3d 154, 161 (2d Cir. 1999). Accordingly, for a public employee's speech to be protected under the First Amendment, it must first relate to "any matter of political, social or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146 (1983).

The determination of whether a particular instance of speech relates to a matter of public concern is a question of law for the court, and must be "determined by the content, form, and context of a given statement, as revealed by the whole record." *Id.* at 148; *see Hanig v. Yorktown Cent. Sch.*

---

other indices . . . unique to a particular situation." *Crady*, 993 F.2d at 136. Because plaintiff was subject to disciplinary proceedings and terminated as a result thereof, it is without question that plaintiff has suffered an adverse employment action.

*Dist.*, 384 F. Supp. 2d 710, 722 (S.D.N.Y. 2005) (Conner, J.).  In making its determination, the court should focus on the motive of the speaker, and attempt to discern whether the speech was calculated to redress personal grievances or whether it had a broader public purpose.  *See Lewis*, 165 F.3d at 163-64; *Hanig*, 384 F. Supp. 2d at 722.  The key inquiry is whether the statements were made by plaintiff in his role as a disgruntled employee or his role as a concerned citizen.  *See Lewis*, 165 F.3d at 163-64; *Hanig*, 384 F. Supp. 2d at 722.

### 1.      Plaintiff's Statements Concerning the Asbestos in the High School Gymnasium

In the present action, plaintiff alleges that he repeatedly conveyed concerns to his supervisor that there was exposed asbestos in the High School gymnasium which "posed serious health and safety risks to students and staff." (*See* Complt. ¶ 9.)  Plaintiff initially notified his supervisor of the problem in May 2003 upon seeing loose asbestos on the gymnasium's floor.  (*See id.*)  Over the next three months, he continuously expressed concerns to his supervisor who in turn informed defendant Crowley of the situation.  (*See id.* ¶ 10.)  Taking these allegations in the light most favorable to plaintiff, his statements directly touch upon the physical safety of school children and personnel, and they are therefore of public concern and protected under the First Amendment.

It is axiomatic that the safety of our school children and personnel is of utmost importance and concern to the community.  *See Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Ed.*, 444 F.3d 158, 165 (2d Cir. 2006) (finding that an athletic director's statements regarding student hazing and the school's failure to act is a matter of public concern); *Gorman-Bakos v. Cornell Coop. Extension of Schenectady County*, 252 F.3d 545, 553 n.4 (2d Cir. 2001) (finding that speech regarding the safety

of young children in horse shows at a government funded cooperative is a matter of public concern); *see also Cook v. Gwinnett County Sch. Dist.*, 414 F.3d 1313, 1319 (11th Cir. 2005) (finding that the plaintiff's statements to coworkers about the safety of children as affected by bus overcrowding and the lack of time for pre-trip bus inspections was of public concern).  Certainly, plaintiff's complaints regarding the asbestos in the High School gymnasium – a place where students exercise and where teachers and staff work throughout the day – is of public concern.  *See Brennan v. Norton*, 350 F.3d 399, 416 (3d Cir. 2003) (finding that firefighter's complaints regarding asbestos in the firestation were a matter of public concern and thus protected by the First Amendment).  Moreover, the removal of asbestos in educational facilities is regulated by federal law, further highlighting the importance of the issue to the public.  *See, e.g.*, *Munafo v. Metro. Transp. Auth.*, 285 F.3d 201, 212 (2d Cir. 2002) ("If one needed to consult more than common sense, one would need look no farther than the existence of laws such as the Occupational Safety and Health Act of 1970 and similar state laws to recognize that safety in the workplace is a matter of public concern.") (internal citations omitted).[9]

---

[9] The Complaint reads: "Plaintiff expressed his concern that any dislodged asbestos needed to be properly removed and the piping needed to be properly repaired and/or encapsulated, as required by the Asbestos Hazard Emergency [Removal] Act."  (*See* Complt. ¶ 9.)  Interpreting the Complaint in the light most favorable to plaintiff, plaintiff at least impliedly reminded his supervisor that the School District was obligated under federal law to remove the asbestos.  *See Woodlock v. Orange Ulster B.O.C.E.S.*, No. 04 Cv. 5800, 2006 U.S. Dist. LEXIS 45085, at *19 (S.D.N.Y. June 20, 2006) (finding that complaints addressing "deliberate and long continued non-compliance with state law[] w[ere] constitutionally protected"); *Hanig*, 384 F. Supp. 2d at 722 ("[S]peech involving an employer's violation of state law will often be a matter of social and political concern . . . .").  Thus, assuming, as we must on this motion to dismiss, that plaintiff reminded his supervisor that federal law obligated the School District to remove the asbestos, our conclusion that plaintiff's speech is of public concern is further bolstered.  Notably, on a motion to dismiss, the veracity of plaintiff's statement, *i.e.*, whether the School District in fact complied with federal law, is not at issue in determining whether the statements are afforded First Amendment protection.  *See Cioffi*, 444 F.3d at 167 ("The truth of [the plaintiff's] statements, especially on summary judgment, does not bear on whether the speech is personal or public [for purposes of First Amendment retaliation].").

Contrary to defendants' contention, the fact that plaintiff expressed these concerns in the ordinary course of his duties as Head Custodian does not preclude the conclusion that plaintiff's complaints address a matter of public concern. *See Garcetti v. Ceballos*, 126 S. Ct. 1951, 1959 (2006) ("The First Amendment protects some expressions related to the speaker's job."); *Cioffi*, 444 F.3d at 165 (finding that an athletic director's letter to the school superintendent regarding certain hazing incidents among student athletes was afforded First Amendment protection because it touched upon a public concern); *Rookard v. Health & Hosps. Corp.*, 710 F.2d 41, 47 (2d Cir. 1983) (finding that allegations of corrupt and wasteful practices at a municipal hospital by the director of nursing was afforded First Amendment protection, when, "as Director of Nursing, it was her duty to do as she did").

Likewise, the private nature of plaintiff's speech does not preclude First Amendment protection. *See Garcetti*, 126 S. Ct. at 1959 ("That Ceballos expressed his views inside his office, rather than publicly, is not dispositive. Employees in some cases may receive First Amendment protection for expressions made at work."); *Rankin v. McPherson*, 483 U.S. 378, 386 n.11 (1987) ("The private nature of the statement does not . . . vitiate the status of the statement as addressing a matter of public concern."); *Cioffi*, 444 F.3d at 165 ("Although Cioffi sent the November 7 letter privately to Johnson and the Board only, it is not thereby deprived of First Amendment protection."); *see also Cook*, 414 F.3d at 1319 ("The mere fact that [the plaintiff's] speech was made to coworkers or to supervisors rather than directed at the general public does not remove the speech from the category of public concern."). Accordingly, plaintiff's statements regarding the asbestos in the gymnasium are of public concern and are protected under the First Amendment.

19

### 2.   Plaintiff's Prior Union Activities

Plaintiff also alleges that defendants retaliated against him for his past union activities in violation of the First Amendment.  In *Clue v. Johnson*, the Second Circuit held that "[t]here is no doubt that retaliation against public employees solely for their union activities violates the First Amendment."  179 F.3d 57, 60, 61 (2d Cir. 1999) (explaining that "activities on behalf of a union faction that necessarily entail a substantial criticism of management raise matters of public concern under *Connick*.").  Here, plaintiff alleges that as Union President, he "negotiated contracts on behalf of the union and otherwise vigorously advocated on behalf of the union membership with the School District's administration, often to the displeasure of the administration."  (*See* Complt. ¶ 8.) Plaintiff's union activities are not centered around personal grievances, and were not otherwise motivated to enhance his own employment conditions.  *See, e.g.*, *Hanig*, 384 F. Supp. 2d at 722 (finding that the plaintiff's complaints to her union were not protected speech because it "related primarily if not exclusively to her desire to protect her job and/or reputation as a school counselor."). Rather, plaintiff alleges that he was advocating on behalf of the entire union membership and in his role as Union President.  This falls squarely within *Clue*'s prohibition, and defendants do not argue otherwise.  However, even if plaintiff's union activities were not afforded First Amendment protection, his complaints to his supervisor regarding asbestos clearly warrant such protection, and the first element of his First Amendment retaliation claim is thereby satisfied.

### B.   Plaintiff Alleges Sufficient Facts to Plead a Causal Connection

Defendants contend that plaintiff has failed to allege sufficient facts to establish a causal connection between his protected speech and the adverse employment action.  (*See* Defs. Mem.

Supp. Mot. Dismiss at 11.)   In order to establish a causal connection at the pleading stage, the "allegations must be 'sufficient to support the inference that the speech played a substantial part in the adverse action.'" *Davis v. Goord*, 320 F.3d 346, 354 (2d Cir. 2003); *see also Shekhem' El-Bey v. City of New York*, 419 F. Supp. 2d 546, 552 (S.D.N.Y. 2006).   On a motion to dismiss, a reasonable inference of a causal connection is all that is required.  *See Posr v. Court Officer Shield # 207*, 180 F.3d 409, 418 (2d Cir. 1999) ("[T]he plaintiff's pleading need not clearly establish that the defendant harbored retaliatory intent.  It is sufficient to allege facts which could reasonably support an inference to that effect."); *Rivera v. Cmty. Sch. Dist. Nine*, 145 F. Supp. 2d 302, 309 (S.D.N.Y. 2001).  This "can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus." *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999); *see also Chang v. Safe Horizon*, No. 03 Civ. 10100, 2005 U.S. Dist. LEXIS 19015, at *25 (S.D.N.Y. Sept. 1, 2005).

### 1.   Causal Connection Between Plaintiff's Statements Concerning the Asbestos and the Adverse Employment Action

Plaintiff has alleged sufficient facts to support a causal connection between his statements regarding the asbestos and the initiation of disciplinary charges.  For example, plaintiff has alleged a close temporal proximity between his statements and the initiation of disciplinary proceedings.  Beginning in May 2003 and continuing over the next three months, plaintiff expressed concerns regarding the asbestos in the gymnasium to his supervisor who informed defendant Crowley of the situation.  (*See* Complt. ¶¶ 9-10.)  Then, in September 2003, defendants initially attempted to bring

disciplinary charges against plaintiff but they were rescinded because they were not presented to the Board for approval.  In early October 2003, defendants served plaintiff with virtually the same disciplinary charges which ultimately led to plaintiff's termination.  Viewing these facts in the light most favorable to plaintiff, it could have been a matter of days (or at most a month) between plaintiff's statements regarding the asbestos and defendants' initial attempt to bring disciplinary charges against plaintiff.  *See Feingold v. New York*, 366 F.3d 138, 157 (2d Cir. 2004) (holding that a two-week lapse between the plaintiff's initial complaint to his supervisor and the adverse employment action was sufficient); *Gorman-Bakos*, 252 F.3d at 555 (holding that a four-month interval was "sufficient to support an allegation of a causal connection strong enough to survive a summary judgment motion"); *Quinn v. Green Treen Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998) (holding that a three-month interval was sufficient); *Calabro v. Nassau Univ. Med. Ctr.*, 424 F. Supp. 2d 465, 473 (E.D.N.Y. 2006) ("though there is no bright-line rule, an adverse employment action following within a couple [of] months of the protected activity typically, indirectly establishes the causal connection").

In addition, plaintiff alleges several facts evidencing that defendants may have acted with improper motive.  For example, prior to plaintiff's statements concerning the asbestos, defendants were aware of many of the instances of misconduct which were the subject of the disciplinary charges; nevertheless, defendants did not take any action until September 2003. (*See* Complt. ¶¶ 11, 13; *see also* Pl. Mem. Opp. Mot. Dismiss at 10.)  Plaintiff also alleges that his supervisor and defendant Crowley instructed him "not to make a big deal out of" the asbestos in the gymnasium, perhaps evidencing an attempt by defendants to discourage plaintiff from making any further comments of a similar nature.  (*See* Complt. ¶ 9.)  Further, plaintiff alleges that "[a]fter the District

served plaintiff with the disciplinary charges, counsel for the School District . . . threatened to report plaintiff to the District Attorney's office for 'theft of services' if he did not agree to resign." (*See* Complt. ¶ 15.)   Most troubling, however, is that plaintiff alleges that when defendant Marien recommended plaintiff's termination to the Board, she "maliciously claimed that there were things about plaintiff the Board did not know which also justified his termination." (*See* Complt. ¶ 16.) Lastly, plaintiff alleges that after his termination, defendants "maliciously" destroyed his personal belongings which they had previously agreed to securely maintain.[10] (*See* Complt. ¶ 17.)

Considering the close temporal proximity and plaintiff's allegations of defendants' improper motive, plaintiff has alleged sufficient facts, that if proven, would establish a causal connection between his First Amendment speech and the adverse employment action.   Under these circumstances, it would be inappropriate to resolve this issue on a motion to dismiss. *See Woodlock*, 2006 U.S. Dist. LEXIS 45085, at *19 ("Because genuine issues of material fact remain as to motivation, including whether the same action would have been taken against [the plaintiff] absent [the] speech, the issue may not be resolved by a pre-trial motion."); *Collins v. Goord*, 438 F. Supp. 2d 399, 419 (S.D.N.Y. 2006) (denying motion to dismiss when the "plaintiff's causal connection allegations are largely conclusory and his pleadings contain few, if any, specific facts relating to

---

[10] In support of plaintiff's argument that defendants acted with improper motive, plaintiff also alleges that many of the "charges were based on specifications which distorted the underlying true events and purposely excluded important contextual information . . . ." (*See* Complt. ¶ 13; Pl. Mem. Opp. Mot. Dismiss at 10.)  However, this issue has already been litigated and necessarily decided by the hearing officer and the Article 78 court, and plaintiff is therefore precluded from contesting the accuracy of the charges for which he was found guilty. *See, e.g.*, *Burkybile*, 411 F.3d at 313 (in a First Amendment retaliation case, giving preclusive effect to the hearing officer's factual findings that the plaintiff "was terminated for just cause, was mentally disabled, and had demonstrated incompetence, insubordination, neglect, conduct unbecoming an administrator, and misconduct.")

defendants' involvement" because on a motion to dismiss, the "plaintiff need only meet the strictures of Fed. R. Civ. P. 8(a).").

## 2.     Causal Connection Between Plaintiff's Union Activities and the Adverse Employment Action

Conversely, there is some merit to defendants' argument that plaintiff has failed to sufficiently allege a causal connection between plaintiff's union activities and defendants' decision to initiate disciplinary charges.  Defendants' initiation of disciplinary proceedings against plaintiff occurred more than a year after plaintiff was acting as Union President, and plaintiff failed to allege any facts which evidence defendants' animus towards plaintiff as a result of his union activities. Plaintiff merely alleges that "defendants determined to punish [plaintiff] for his union advocacy" "[a]fter plaintiff was no longer Union President, and thus in a weakened position politically[.]" (*See* Complt. ¶ 20.)  With more than a year between the protected speech and the adverse employment action, plaintiff must allege more than conclusory assertions in order to establish a causal connection. *See Roper v. Hynes*, No. 05 Civ. 7664, 2006 WL 2773032, at *8 (S.D.N.Y. Sept. 27, 2006) (finding that the plaintiff failed to sufficiently allege causal connection when the time interval between the protected speech and the adverse employment action was approximately two years and the plaintiff failed to allege any additional non-conclusory facts establishing a causal connection); *Estate of Smith v. Town of West Hartford*, 186 F. Supp. 2d 146, 156 (D. Conn. 2002) (dismissing the plaintiff's First Amendment retaliation claim on a motion to dismiss when "[t]he complaint . . . allege[d] that [the plaintiff] was the union president, was active in union activities and that the defendants' . . . action was in retaliation for his position as union president").  However, because plaintiff sufficiently

pleaded a causal connection with regard to his statements concerning the asbestos, he has established

a *prima facie* case for First Amendment retaliation, and we need not address this issue any further.

**C.     Whether Defendants Would Have Terminated Plaintiff in the Absence of His Protected Speech**

Defendants argue that the "District would have been justified in terminating the plaintiff's

employment even in the absence of the alleged protected speech and/or activity of the plaintiff."

(*See* Defs. Mem. Supp. Mot. Dismiss at 12.)   The question, however, is not whether defendants

"would have been justified," but whether they "would have reached the same decision . . . even in

the absence of the protected conduct."   *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429

U.S. 274, 287 (1977); *Scott v. Coughlin*, 344 F.3d 282, 287-88 (2d Cir. 2003); *Iannillo v. County of*

*Orange*, 187 F. Supp. 2d 170, 180 (S.D.N.Y. 2002) (Conner, J.).   In any event, this issue cannot be

resolved on defendants' motion to dismiss in light of plaintiff's allegations of close temporal

proximity and improper motive on the part of defendants.   *See Johnson v. Eggersdorf*, 8 F. App'x

140, 144 (2d Cir. 2001) ("*Mt. Healthy* sets forth the appropriate standard for a § 1983 claim at trial,

not for a motion to dismiss based on the pleadings."); *DePace v. Flaherty*, 183 F. Supp. 2d 633, 638

(S.D.N.Y. 2002) ("Causation generally is a question for the finder of fact.   On this motion, the role

of the Court is to determine whether [the plaintiff] has alleged facts that could support a reasonable

finding of a causal connection between his protected speech and the adverse employment action.").[11]

---

[11] Defendants "may [also] defend its actions by showing the employee's speech disrupted the workplace . . . ." *Cioffi*, 444 F.3d at 162-63 (citations omitted).   "To prevail with this defense the public employer must demonstrate that its interest in promoting an efficient workplace outweighs the employee's interest in commenting on matters of public concern . . . ." *Id.*   In the present case, however, defendants have not raised this defense and, accordingly, we do not address it herein.   In any event, "consideration of th[is] defense[] is premature on [a] motion to dismiss." *Anemone v.*

Accordingly, plaintiff has alleged sufficient facts, that if proven, would support a cause of action for First Amendment retaliation, and defendants' motion to dismiss is therefore denied.

## IV.    **Plaintiff's Other Claims**

Defendants also move to dismiss plaintiff's due process claims under the Fourteenth Amendment, as well as plaintiff's state law claims for the destruction of his property.  Plaintiff, however, has alleged no such claims.  Plaintiff has only brought a claim for First Amendment retaliation under the First and Fourteenth Amendments.   (*See* Pl. Mem. Opp. Mot. Dismiss at 6.) Plaintiff's reference to the Fourteenth Amendment merely refers to the First Amendment's application via its incorporation under the Fourteenth Amendment's Due Process Clause. *See Nike*, 539 U.S. at 658; *Deegan v. City of Ithaca*, 444 F.3d 135, 142 (2d Cir. 2006).

## CONCLUSION

For the reasons stated above, defendants Somers Central School District, Joanne Marien and Kenneth Crowley's  motion to dismiss the Complaint is denied.

SO ORDERED.

Dated: White Plains, NY
       March 21, 2007

                                       *William C. Conner*
                                       Senior United States District Judge

---

*Metro. Transp. Auth.*, 410 F. Supp. 2d 255, 267 (S.D.N.Y. 2006).