UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
NORMAN MOREY,

                     Plaintiff,

       -against-

SOMERS CENTRAL SCHOOL DISTRICT,
JOANNE MARIEN, Superintendent of the Schools,
KENNETH CROWLEY, Assistant Superintendent
for Business, sued in their individual capacities,

                     Defendants.
------------------------------------------------------------X

06 CIV. 1877 (WCC)

**DEFENDANTS' LOCAL RULE 56.1 STATEMENT OF FACTS**

Pursuant to Local Civil Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, the defendants, SOMERS CENTRAL SCHOOL DISTRICT, JOANNE MARIEN ("Dr. Marien"), and KENNETH CROWLEY ("Mr. Crowley") (hereinafter collectively referred to as "the District"), by and through their attorneys, RUTHERFORD & CHRISTIE, LLP, submit the following statement of material facts in connection with their motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure:

**Plaintiff's Complaint**

1. The plaintiff commenced the instant lawsuit by the filing of a Summons and Complaint on or about March 9, 2006. See Exhibit "A".[1]

2. The plaintiff is seeking monetary relief for the alleged violation of his rights under the First and Fourteenth Amendments of the United States Constitution, as made actionable by

---

[1] All references to Exhibits "A"- "S" refer to the exhibits annexed to the Declaration of Lewis R. Silverman, sworn to on February 20, 2009 and submitted in support of the District's motion for summary judgment.

42 U.S.C. § 1983. Id., at ¶¶ 1, 24-25.

3.  Specifically, the plaintiff alleges that the District preferred disciplinary charges against him, and subsequently terminated him, in retaliation for expressing concern about possible asbestos in the Somers High School ("High School") gymnasium and/or for his union activity. Id., at ¶¶ 18-22.

**Factual Background**

*The Parties*

4.  The plaintiff was hired by the District as a custodial worker in 1984 and worked for the District until his termination in January, 2004. Id., at ¶ 2; see also Exhibit "C", p. 14 lines 9-23.

5.  The plaintiff served as Head Custodian of the High School from 1995 until his termination in 2004. See Exhibit "A", ¶ 2; see also Exhibit "C", p. 22, lines 17-24; see also Exhibit "S".

6.  Dr. Marien has been the Superintendent of the District since July, 2002. See Exhibit "D", p. 7, lines 9-13.

7.  Prior to this, Dr. Marien served as the District's Assistant Superintendent for Instruction for eight years. Id., at p. 7, lines 14-23.

8.  Mr. Crowley has served as the District's Assistant Superintendent for Business since September, 1993. See Exhibit "E", p. 6, lines 16-24.

*Plaintiff's Asbestos Training and Job Duties*

9.  The District paid for the plaintiff to receive training in asbestos. See Exhibit "C", p. 9, lines 2-3, p. 35, lines 7-9.

10. The plaintiff was trained as an asbestos handler, supervisor, manager, and inspector. Id., at p. 35, lines 11-25, p. 36, lines 8-25, p. 37, lines 2-25, p. 38, lines 2-7.

11. The plaintiff received state-issued certificates after completing such training, but they expired. Id., at p. 38, lines 17-20, p. 39, lines 3-7.

12. As Head Custodian at the High School, the plaintiff was responsible for the maintenance of buildings and grounds on the campus, which included, among other things: supervising custodial workers; handling and delegating work requests; supervising the heating, ventilation, and alarm systems of the school; assisting with custodial, maintenance, and repair work; cleaning the building, and assisting the cafeteria workers. Id., at p. 30, lines 4-25, p. 31, lines 2-20; see also Exhibit "Q".

### *Plaintiff's Union Activity*

13. During his employment with the District, the plaintiff was a member of the Somers School Related Personnel ("the Union"). See Exhibit "C", p. 23, lines 20-24.

14 While a member of the Union, the plaintiff also served as a custodial representative, Vice-President, and President. The last official position the plaintiff held in the Union was President Id., at p. 24, lines 13-25, p. 25, lines 2-25, p. 25, lines 2-5.

15. The plaintiff served as President of the Union at various times from 1988 to July, 2002. Id., at p. p. 49, lines 2-25, p. 50, lines 2-8.

16. There was a three year period when the plaintiff was not a member of the Union because he was serving as Acting Superintendent of Buildings and Grounds. Id., at p. 24, lines 5-12.

17 As a President of the Union, the plaintiff participated in a few grievance proceedings. Id., at p. 28, lines 18-24, p. 29, lines 2-9.

18. While serving as Vice-President and President, the plaintiff participated in contract negotiations with the District. Id., at p. 26, lines 14-25; p. 27, lines 2-6.

19. The plaintiff recalls taking part in either three or four contract negotiations with the District. Id.

20. The plaintiff claims the administration was displeased by his advocacy during his service as Union President. See Exhibit "A" at ¶ 8.

21. All the advocacy the plaintiff claims the administration was displeased by occurred during his service as President of the Union. Id.; see also Exhibit "C", p. 53, lines 6-8.

*May, 2003 Gymnasium Incident*

22. One day in May, 2003 the plaintiff received a phone call in his office that there was a mess in the High School gymnasium that needed attention. Id., at p. 55, lines 10-25; p. 56, lines 2-7.

23. The plaintiff and another custodian, Frank Donaldson ("Mr. Donaldson"), went to the gymnasium where a substitute nurse pointed out the mess to them. Id., at p. 56, lines 18-25, p. 57, lines 2-6.

24. The mess consisted of grayish chunks and smaller pieces of material that were scattered on the floor near the air handler vent, which is located on the wall of the gymnasium. Id., at p. 57, lines 7-25; p. 58, lines 2-7.

25. It appeared that insulation from the elbow of the roof drain had become dislodged and fallen down to the floor. Id., at p. 58, lines 8-25, p. 59, lines 2-3.

26. The plaintiff contacted John Ness ("Mr. Ness"), the Superintendent of Buildings and Transportation, and informed him that there was a mess in the gymnasium that he believed might contain asbestos. Id., at p. 59, lines 6-12; see also Exhibit "R", ¶¶ 7-8.

27. Mr. Ness instructed the plaintiff to clean up the mess. See Exhibit "C", p. 59, lines 16-18; see also Exhibit "R", ¶¶ 8-9.

28. The plaintiff assumed this material might contain asbestos because of the knowledge he gained during his asbestos training. See Exhibit "C", p. 59, lines 19-25.

29. The plaintiff soaked the mess with water, swept it into plastic bag, and placed it in a custodial closet until he was directed to throw the bag away. Id., at p. 61, lines 22-25, p. 62, lines 13-24.

30. Mr. Ness came to the plaintiff's office within forty-five minutes to one hour after the plaintiff received the phone call about the mess in the gymnasium. Id., at p. 64, lines 9-20.

31. The plaintiff and Mr. Ness then went back to the gymnasium where the plaintiff showed Mr. Ness where the insulation had fallen from. Id., at p. 64, lines 23-25, p. 65, lines 2-12.

32. The plaintiff alleges he expressed his displeasure at the way Mr. Ness responded to the situation to Mr. Ness as they walked to the gymnasium together. Id., at p. 14-24.

33. Mr. Ness directed the plaintiff to come to school early the next morning and tape up the area from which the insulation appeared to have fallen. Id., at p. 66, lines 7-10.

34. The plaintiff did in fact tape up this area. Id., at p. 68, lines 11-23.

35. Mr. Crowley called the plaintiff on the day of the incident to thank him for how he handled this situation. Id., at p. 70, lines 12-15, 23-25, p. 71, lines 2-3.

36. The plaintiff alleges Mr. Crowley thanked him for not making a big deal about the situation. Id., at p. 71, lines 16-20.

37. During this conversation, Mr. Crowley did not make any mention about the material possibly containing asbestos. Id., at p. 72, lines 6-9.

38. During 2003 Mr. Crowley did not have any conversations with the plaintiff about a potential asbestos problem in the High School gymnasium. See Exhibit "E", p. 8, lines 16-19, p. 10, lines 12-15.

39. At some point, Mr. Crowley had a conversation with Mr. Ness about insulation that had become dislodged from a pipe, but asbestos was not mentioned in the conversation. Id., at p. 11, lines 14-25

40. The plaintiff alleges he spoke to Mr. Ness both prior to and following graduation in June, 2004 about the mess in the gymnasium and Mr. Ness told him that he would get back to him. See Exhibit "C", p. 74, lines 8-24, p. 75, lines 16-23.

41. The plaintiff alleges that after July 4, 2003 Mr. Ness told him the administration would handle the situation and not to be a troublemaker. Id., at p. 76, lines 3-12.

42. The plaintiff claims he understood this to mean the District would use disciplinary charges to deal with troublemakers. Id., at p. 15-18.

43. Mr. Ness never warned the plaintiff not to speak about the mess in the gymnasium and did not tell the plaintiff the District had ways of dealing with troublemakers. See Exhibit "R", ¶¶ 11-12.

44. Mr. Ness was never instructed by Dr. Marien or Mr. Crowley to make sure the plaintiff did not discuss the mess in the gymnasium or his belief that it might contain asbestos. Id., at ¶ 13.

45. The plaintiff does not know if Mr. Ness informed anyone else in the District about the conversations they had. See Exhibit "C", p. 80, lines 14-17.

46. The plaintiff does not recall discussing the mess in the gymnasium with anyone else in the District other than Mr. Ness, Mr. Donaldson, Steve Warren, and Eddie Polverari. Id.,

at p. 80, lines 18-24.

47. The plaintiff did not have any conversations about the situation with any community members or students. Id., at p. 61, lines 9-11; p. 81, lines 4-6.

48. The plaintiff never told his wife that anyone from the District asked him to keep his concerns about the possibility of asbestos in the gymnasium quiet. See Exhibit "F", p.13, lines 22-25.

49. Mr. Crowley does not recall having a conversation with the plaintiff regarding potential asbestos in the gymnasium during 2003. See Exhibit "E", p. 10, lines 12-15.

50. The first time Dr. Marien learned about the plaintiff's concerns regarding asbestos in the High School gymnasium was after receiving this Complaint. See Exhibit "D", p. 17, lines 14-18.

### *Plaintiff's Performance and Relationship with Subordinates*

51. During his employment, Mr. Ness spoke to the plaintiff about his temper. See Exhibit "C", p. 102, lines 11-16

52. During his employment with the District the plaintiff had several issues with other staff member or subordinates. See Exhibit "G"; see also Exhibit "N"; see also Exhibit "R", ¶¶ 3-4, 15-16.

53. During 2003 the plaintiff was experiencing insubordination among his custodial staff. See Exhibit "C", p. 77, lines 5-11.

54. In the Summer, 2003, Mr. Crowley spoke to Mr. Ness about problems at the High School following a complaint by Frank Longo ("Mr. Longo"). See Exhibit "R", ¶ 14.

55. Mr. Ness spoke to Mr. Longo who informed him that the High School custodians felt they were being verbally abused and wanted the plaintiff removed from the High School. Id.,

at ¶ 15.

56. On September 2, 2003 the plaintiff's subordinates requested a meeting to discuss their desire for the plaintiff to be transferred. See Exhibit "H".

57. Over the Summer, 2003 the Principal of the High School and Mr. Ness met with the custodial staff to address their concerns regarding the plaintiff and his role as a supervisor. They felt it necessary to speak to Dr. Marien about these concerns. See Exhibit "D", p. 46, lines 4-20, p. 47, lines 2-16; see also Exhibit "R", ¶¶ 16-17.

58. Around September, 2003 Dr. Marien met with certain custodial and maintenance staff in her office individually to discuss the issues. See Exhibit "D", p. 42, lines 3-17.

59. After the allegations were made about the plaintiff, the District became aware they could review the building activity reports for certain detail. See Exhibit "E", p. 47, lines 5-21.

### *Disciplinary Charges*

60. When the plaintiff returned from vacation after school opened for the 2003-2004 school year he was called to an informal meeting with Dr. Marien and Mr. Crowley, during which he was informed he was being assigned to home with pay while the District investigated allegations brought forward and considered disciplinary charges. See Exhibit "C", p. 81, 7-25, p. 82, 2-10; see also Exhibit "D", p. 30, lines 3-9, p. 31, lines 2-9.

61. During this meeting Dr. Marien wanted to give the plaintiff an opportunity to present his side of the story regarding the allegations made about him. See Exhibit "E", p. 27, lines 23-25, p. 28, lines 2-19.

62. On September 18, 2003 the plaintiff and his union representative attended a formal meeting with Dr. Marien and Mr. Crowley. See Exhibit "C", p. 83, lines 3-12; see also, Exhibit "I".

63. The plaintiff initially answered Dr. Marien's questions, but then refused to answer at the advice of his union representative. Id., at p. 83, lines 15-25, p. 84, lines 2-5.

64. Dr. Marien advised the plaintiff that failing to answer the questions would be considered insubordination. Id., at p. 97, lines 7-12.

65. During this meeting Dr. Marien served the plaintiff with disciplinary charges, but these charges were rescinded because the Board of Education had not voted on them. See Exhibit "D", p. 34, line 25, p. 35, lines 2-8; p. 36, lines 19-24.

66. Mr. Crowley took notes during this meeting. See Exhibit "E", p. 30, lines 14-22; see also Exhibit "J".

67. The issue of the mess in the gymnasium was not addressed during either meeting. See Exhibit "C", p. 85, lines 14-20; see also Exhibit "J".

68. The plaintiff's conversations with Mr. Ness were not addressed at either meeting. See Exhibit "C", p. 86, lines 2-12; see also Exhibit "J".

69. The plaintiff was never told what was discussed during the Board Meeting where they voted to prefer charges against him. See Exhibit "C", p. 118, lines 18-23.

70. On October 8, 2003 the plaintiff was suspended and served with disciplinary charges. See Exhibit "K"; see also Exhibit "L".

71. Prior to the commencement of the § 75 hearing the District and a Union lawyer representing the plaintiff discussed a deal where the plaintiff could resign and civil service would not be notified of the charges, but the plaintiff refused to accept the deal. See Exhibit "C", p. 91, lines 6-24.

72. The plaintiff never personally heard Ron Longo threaten to report him for theft of services and he only learned of it through this Union representative. Id., p. 122, lines 16-25, p.

123, lines 2-6.

73.     The plaintiff has no knowledge that anyone from the District directed Mr. Longo to make the alleged threat or agreed with his doing so. Id., at p. 92, lines 14-20.

74.     Dr. Marien was never made aware that Mr. Longo was going to make such a threat to the plaintiff and does not recall Mr. Longo making such a threat in her presence. See Exhibit "D", p. 38, lines 3-25, p. 39, line 2, p. 40, lines 3-7.

75.     A hearing pursuant to § 75 was then conducted and presided over by Hearing Officer Joseph Wooley. See Exhibit "N".

76.     The plaintiff was represented by Christopher Watkins during this hearing. Id.

77.     The plaintiff submitted an answer to the disciplinary charges prior to the hearing, which failed to allege retaliation as a defense. See Exhibit "M".

78.     On January 5, 2004 Hearing Officer Wooley rendered a decision finding the plaintiff guilty of several charges of misconduct and competence and recommending his termination. See Exhibit "N".

79.     On January 7, 2004 the Board of Education acted on the recommendation of Hearing Officer Wooley and terminated the plaintiff for his misconduct and incompetence. See Exhibit "O".

80.     Dr. Marien never made a statement to the Board of Education indicating there were things about the plaintiff they did not know that justified his termination. See Exhibit "D", p. 41, lines 16-23.

81.     In a proceeding pursuant to CPLR Article 78 the plaintiff appealed the District's decision to terminate his employment, which was unanimously rejected on December 12, 2005. See Exhibit "P"

82. The plaintiff was told that after he was terminated, Dr. Marien had a meeting with some administrators and custodians during which she said there were things about him they did not know that justified his termination. See Exhibit "C", p. 95, lines 16-25, p. 96, lines 3-17.

83. Following the plaintiff's termination, Dr. Marien met with the custodial staff, who were aware of the plaintiff's termination, and discussed how the District would move forward. See Exhibit "D", p. 43, 2-25, p. 44, lines 2-3.

84. Mr. Crowley agreed to maintain the plaintiff's personal belongings during the pendency of the hearing. See Exhibit "C", p. 97, lines 21-23; see also Exhibit "E", p. 35, lines 5-13.

85. Mr. Ness was not aware that the plaintiff's belongings were to be safeguarded by the District and he instructed a box of items to be discarded that he did not realize contained the plaintiff's belongings. See Exhibit "E", p. 39, lines 5-24, p. 40, lines 2-21.

Dated: New York, New York
February 18, 2009

Respectfully submitted,

RUTHERFORD & CHRISTIE, LLP

By: _____
Lewis R. Silverman (LS 9723)
Attorneys for Defendants
369 Lexington Avenue, 8th Floor
New York, New York 10017
(212) 599-5799

TO: Bergstein & Ullrich
15 Railroad Avenue
Chester, New York 10918
(845) 469-1277
Attention: Christopher D. Watkins, Esq.