UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NORMAN MOREY,

               Plaintiff,

     -against-

SOMERS CENTRAL SCHOOL
DISTRICT, JOANNE MARIEN,
Superintendent of the Schools, and
KENNETH CROWLEY, Assistant
superintendent for Business, sued in their
individual capacities,

               Defendants.

**MEMORANDUM OPINION
AND ORDER**

06 Civ. 1877 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        This is a Section 1983 action in which Plaintiff Norman Morey seeks

damages for alleged violations of his First and Fourteenth Amendments rights.[1] (Cmplt.

¶¶ 1, 24-25) Morey asserts that Defendants terminated his employment as head custodian

at Somers Central High School in retaliation for his expressing concern about possible

asbestos contamination in the high school gymnasium.[2] (Id. ¶¶ 19, 21)

        Defendants have moved for summary judgment, arguing that Plaintiff's

speech is not constitutionally protected, that there is no causal connection between the

speech and adverse employment action, and that, in any event, Plaintiff would have been

terminated for reasons independent of his speech. (Docket No. 15) Because Plaintiff's

---

[1] This case was originally assigned to Judge William C. Conner and was reassigned to this Court on July 22, 2009, following Judge Conner's death.

[2] Although the Complaint also asserts that Morey was terminated because of his union activities, Morey withdrew this claim in his opposition brief. (Opp. Br. 1)

speech is not constitutionally protected, Defendants' motion for summary judgment will be granted.

## BACKGROUND

Morey worked as a custodian for the Somers School District from 1984 until his January 2004 termination.  (Def. Rule 56.1 Stat. ¶ 4)[3]  Beginning in November 1995, and continuing until his termination, he served as head custodian at the District's High School.  (Id. ¶ 5)  During the relevant time period – May 2003 to January 2004 – Defendants Marien and Crowley served, respectively, as District Superintendent and Assistant Superintendent for Business.  (Id. ¶¶ 6, 8)

During his employment, but before becoming head custodian at the high school, Morey received district-sponsored training concerning the handling, inspection, and management of asbestos.  (Id. ¶¶ 9-10; Silverman Decl. Ex. C at 35-44)[4]  He received state-issued certificates for completing this training.  (Def. Rule 56.1 Stat. ¶11; Ex. C at 38)  Morey's duties as head custodian included supervising the maintenance of buildings and grounds; cleaning the building; handling work requests and making assignments; ensuring that the heating, air conditioning and fire alarm systems were in

_____

[3]  To the extent that this Court relies on facts drawn from Defendants' Rule 56.1 statement, it has done so because Morey has not disputed those facts or has not done so with citations to admissible evidence.  See Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.") (citations omitted).  Where Plaintiff disagrees with Defendants' characterization of the cited evidence, and has presented an evidentiary basis for doing so, the Court relies on Plaintiff's characterization of the evidence.  Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001) (court must draw all rational factual inferences in non-movant's favor in deciding summary judgment motion).

[4]  All exhibits cited in this opinion are attached to the Declaration of Lewis R. Silverman. (Docket No. 18)

working order; assisting with custodial, maintenance and repair work; and assisting cafeteria workers.  (Id. ¶12; Ex. C at 30-31)  Plaintiff's duties as head custodian did not include identifying or removing asbestos (Pltf. Rule 56.1 Stat. ¶ 10; Ex. D at 25), but prior to assuming this position he had performed work for the District involving asbestos removal or encapsulation and received a special stipend for this work.  (Ex. C at 40-41)

In May 2003, Morey received a phone call stating that there was a "mess" in the high school gymnasium that required his attention.  (Id. ¶ 22)  Grayish-white "chunks" and "larger pieces" of insulation from the elbow of a roof drain had become dislodged, fallen from the ceiling, and were scattered on the floor near the gym's air handler vent.  (Id. ¶¶ 24-25; Ex. C at 57-58)  Morey contacted Superintendent of Buildings and Transportation John Ness, and – based on his prior training – informed Ness that the fallen insulation might contain asbestos.  Ness instructed Morey to dispose of this material.  (Def. Rule 56.1 Stat. ¶¶ 26-28)  Morey swept the fallen insulation into a plastic bag and stored the bag in a custodial closet until he was instructed to throw it away.  (Id. ¶ 29)

Later that day, Morey showed Ness where the insulation had come loose. Morey also alleges that he told Ness "that the gym should have been closed down until it was determined [whether the material] was asbestos . . . via air samples or what have you." (Id. ¶ 31-32; Ex. C at 64-65)  Ness, however, merely instructed Plaintiff to come to school early the next day and tape up the loose insulation.  (Def. Rule 56.1 Stat. ¶¶ 33-34)

Defendant Crowley called Morey and "thanked him for not making a big deal about the situation."[5]  (Id. ¶ 36; Ex. C at 70-71)

The parties dispute whether there were additional conversations in 2003 about a potential asbestos problem at the high school.  (Id. ¶ 38-9; Pltf. Rule 56.1 Stat. ¶¶ 38-39; Pltf. Rule 56.1 Counter-Stat. ¶¶ 12-13, 15, 17, 19, 22; Def. Rule 56.1 Counter-Stat. ¶¶ 12-13, 15, 17, 19, 22)  Plaintiff alleges that he expressed concerns to Ness and Crowley about possible asbestos contamination and that Ness told him "not to be a troublemaker and [] that the administration has ways of dealing with trouble makers."  Morey understood this as a threat of disciplinary action.  (Ex. C at 75-76; Def Rule 56.1 Stat. ¶ 43)  While the parties dispute whether Morey discussed his concerns with District officials after May 2003, it is undisputed that Morey never shared his concerns with the public, with students, or with anyone outside the District administration.  (Def. Rule 56.1 Stat. ¶¶ 47-48)

During the first week of September 2003, Defendant Marien removed Morey from his duties at the high school and instructed him to remain at home.  (Pltf. & Def. Rule 56.1 Counter-Stat. ¶ 24)  On September 18, 2003, Morey and his union representative met with Defendants Marien and Crowley, and Marien served Morey with disciplinary charges.  (Def. Rule 56.1 Stat. ¶¶ 62, 65)  It is undisputed that the alleged asbestos incident in the gym was not discussed at the meeting or addressed in the disciplinary charges.  (Id. ¶¶ 67-68)  These charges were later rescinded because the Board of Education had not yet approved them.  (Id. at ¶ 65)

---

[5]  Crowley denies this exchange.  (Def. Rule 56. 1 Counter-Stat. ¶ 9)

4

On October 8, 2003, Morey was suspended and re-served with disciplinary charges.  (Id. ¶ 70)  The charges alleged misconduct dating back to April 2002 and included allegations that Morey had:  (1) submitted inaccurate time sheets in connection with obtaining overtime pay; and (2) verbally and physically abused custodial staff.  (Pltf. & Def. Rule 56.1 Counter-Stat. ¶ 28)  Prior to the May 2003 incident in the gym, Plaintiff had never been the subject of any formal disciplinary charges but had been the subject of several critical letters and memoranda.  (Pltf. & Def. Rule 56.1 Counter-Stat. ¶ 2)

Pursuant to Section 75 of the New York Civil Service Law, a hearing took place in October and November of 2003 concerning the disciplinary charges against Morey.[6]  (Def. Rule 56.1 Stat. ¶ 75; Ex. N)  Plaintiff had union representation at the hearing.  (Def. Rule 56.1 Stat. ¶¶ 76-77)  In a written decision, Hearing Officer Joseph Wooley found Morey guilty of several charges of misconduct and recommended that he be terminated.  (Def. Rule 56.1 Stat. ¶ 78; Ex. N)  Based on the Section 75 hearing, the Board of Education terminated Morey's employment on January 7, 2004.  Morey appealed his termination in a state court Article 78 proceeding, but on December 12, 2005, the court confirmed the hearing officer's determination and denied Morey relief.  (Def. Rule 56.1 Stat. ¶ 81; Ex. P)  See Morey v. Somers Cent. Sch. Dist., 24 A.D.3d 558, 559 (2nd Dep't 2005).

Morey filed this Section 1983 action on March 9, 2006.  On June 12, 2006, Defendants filed a motion to dismiss.  Judge Conner denied the motion in an opinion dated March 21, 2007.  Morey v. Somers Cent. Sch. Dist., No. 06 Civ. 1877

---

[6] Under Civil Service Law § 75, employees have a right to a hearing on disciplinary charges prior to being "removed or otherwise subjected to any disciplinary penalty. . . ." MᴄKɪɴɴᴇʏ's N.Y. Cɪᴠ. Sᴇʀᴠ. L. § 75(1).

(WCC), 2007 WL 867203 (S.D.N.Y. Mar. 21, 2007).  Judge Conner held that collateral

estoppel based on the Section 75 and Article 78 proceedings did not bar Morey's First

Amendment retaliation claim, that Morey's statements regarding possible asbestos in the

high school are constitutionally protected because they involve a matter of public

concern, and that the Complaint alleged sufficient facts to demonstrate a causal

connection between the protected speech and his termination.  Id.

   While Judge Conner noted that Morey's concerns were expressed "in the

ordinary course of his duties as Head Custodian," and held that "plaintiff's statements

regarding the asbestos in the gymnasium are of public concern and are protected under

the First Amendment," Morey, 2007 WL 867203, at *33-*34, he did not address whether

Morey was speaking as a citizen or as an employee of the School District.  Instead, he

merely noted that the fact that Morey's statements were made "in the ordinary course of

his duties . . . does not preclude the conclusion that plaintiff's complaints address a matter

of public concern."  Id. at *33.

## DISCUSSION

   Defendants argue that they are entitled to summary judgment on a variety

of grounds, but this Court reaches only one issue:  whether Morey's speech is

constitutionally protected.  Because Morey's remarks about possible asbestos

contamination at Somers Central High School were made pursuant to his official duties

as head custodian and not as a citizen, his speech is not constitutionally protected and

does not provide a basis for a valid First Amendment retaliation claim.   Accordingly,

Defendants are entitled to summary judgment.

# I.     LEGAL STANDARDS

## A.     Summary Judgment

Summary judgment is appropriate only when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Whether facts are material is a determination made by looking to substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "The movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim."  Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).

"A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor."  Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008).  In deciding a summary judgment motion, the Court "resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment."  Cifra v. General Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001).  However, "a party may not 'rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.'"  Lipton v. Nature Co., 71 F.3d 464, 469 (2d Cir. 1995) (quoting Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986).

## B.     First Amendment Retaliation Claims

The First Amendment of the United States Constitution states, in relevant part, that "Congress shall make no law . . . abridging the freedom of speech. . . ."  U.S. CONST. amend. I.  The First Amendment is applied to the states by incorporation under

the Fourteenth Amendment.  See Deegan v. City of Ithaca, 444 F.3d 135, 142 (2d Cir. 2006).

        "To survive a motion for summary judgment on a First Amendment retaliation claim, the plaintiff must present evidence which shows (1) that the speech at issue was protected, (2) that he suffered an adverse employment action, and (3) that there was a causal connection between the protected speech and the adverse employment action."  Cotarelo v. Vill. of Sleepy Hollow Police Dep't, 460 F.3d 247, 251 (2d Cir. 2006).

        Whether the speech of a public employee is protected from retaliation under the First Amendment depends on "'whether the employee spoke as a citizen on a matter of public concern' and, if so, 'whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.'"  Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (quoting Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)).

        The Supreme Court has made clear that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."  Garcetti v. Ceballos, 547 U.S. 410, 421 (2006); see Ruotolo v. City of New York, No. 03 Civ. 5045 (SHS), 2006 WL 2033662, at *5 (S.D.N.Y. July 19, 2006), aff'd, 514 F.3d 184 (2d Cir. 2008) ("After Garcetti, for a lawsuit adequately to charge a First Amendment retaliation claim, the lawsuit must be predicated on speech made by a public employee as a citizen, and not pursuant to his or her official duties.") (emphasis in original).

"'Whether an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record.'"  Ruotolo, 514 F.3d at 189 (quoting Lewis v. Cowen, 165 F.3d 154, 163 (2d Cir. 1999)).  A matter of public concern is "one that 'relat[es] to any matter of political, social, or other concern to the community.'"  Sousa v. Roque, 578 F.3d 164, 170 (2d Cir. 2009) (quoting Connick v. Myers, 461 U.S. 138, 146 (1983)).  "The heart of the matter is whether the employee's speech was 'calculated to redress personal grievances or whether it had a broader public purpose.'"  Ruotolo, 514 F.3d at 189 (quoting Lewis, 165 F.3d at 163-64).  "'Speech on a purely private matter, such as an employee's dissatisfaction with the conditions of his employment, does not pertain to a matter of public concern.'"  Sousa, 578 F.3d at 174 (quoting Lewis, 165 F.3d at 164).  However, "a public employee may not transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run."  Ruotolo, 514 F.3d at 190 (citations omitted).  Although the speaker's motive is relevant to the inquiry, it is not dispositive. Sousa, 578 F.3d at 174.

## II.  PLAINTIFF'S SPEECH IS NOT PROTECTED

In determining whether Morey's speech is constitutionally protected, the Court must determine "'whether [he] spoke as a citizen on a matter of public concern.'" Huth v. Haslun, et al., No. 08-2203-cv, at *6 (2d Cir. March 11, 2010) (quoting Garcetti, 547 U.S. at 418).  "It is critical to note that this [determination] contains two separate requirements – namely, (1) that the employee speak as a citizen, and (2) that the employee speak on a matter of public concern.  If either of these requirements is not met, then plaintiff's First Amendment retaliation claim must fail as a matter of law."  Lofaro

9

v. Huntington Union Free Sch. Dist., No. 09-CV-2101 (JFB)(MLO), 2009 WL 4981182,
at *6 (E.D.N.Y. Dec. 23, 2009) (citing Sousa, 578 F.3d at 170 ("If the court determines
that the plaintiff either did not speak as a citizen or did not speak on a matter of public
concern, 'the employee has no First Amendment cause of action based on his or her
employer's reaction to the speech.'")).

        The "objective inquiry into whether a public employee spoke 'pursuant to'
his or her official duties is 'a practical one,'" and the scope of the employee's duties is
not determined by a formal job description.  Weintraub v. Bd. of Educ. of the City of
N.Y., 593 F.3d 196, 202 (2d Cir. 2010) (quoting Garcetti, 547 U.S. at 424).  "Speech that
government employers have not expressly required may still be 'pursuant to official
duties,' so long as the speech is in furtherance of such duties."  Id. (citing Williams v.
Dallas Indep. Sch. Dist., 480 F.3d 689, 694 (5th Cir. 2007).  "'[P]ublic employees who
convey complaints or grievances about a matter pertaining to their official duties to their
supervisors do so in their capacities as employees rather than citizens, even when the
subject matter of their speech touches upon a matter of public concern,' and, therefore,
such speech is not First Amendment protected."  Eugenio v. Walder, No. 06-CV-4928
(CS)(GAY), 2009 WL 1904526, at *7 (S.D.N.Y. July 2, 2009) (quoting Weintraub v. Bd.
of Educ. of the City of N.Y., 489 F. Supp. 2d 209, 221 (E.D.N.Y. 2007), aff'd, 593 F.3d
196 (2d Cir. 2010)) (emphasis added).

        Defendants argue that Morey's alleged speech concerned "precisely the
sort of issue the plaintiff was responsible for handling on a day-to-day basis as Head
Custodian" (Def. Br. at 11), and that in "express[ing] his displeasure to Mr. Crowley or
other District employees about how the situation was handled, he was still speaking

pursuant to his official duties since he was responsible for making decisions regarding the maintenance and cleaning of the building, and for identifying potential issues regarding the upkeep of the building."  (Id.)  Plaintiff argues that it is undisputed that "he was not responsible for ensuring that the District properly identified and abated any loose asbestos in the high school" (Opp. at 9), and that accordingly his speech was not made "pursuant to [his] official job duties," see Garcetti, 547 U.S. at 421, and is thus protected. Because the record demonstrates that Morey's speech was not made in his role as a citizen but rather pursuant to his role as head custodian at Somers Central High School, his First Amendment retaliation claim fails as a matter of law.

### A.    Plaintiff Spoke as a Public Employee and Not as a Citizen

"Although there is no simple checklist or formula by which to determine whether the employee was speaking as a private citizen or as a public employee, in general 'the cases distinguish between speech that is the kind of activity engaged in by citizens who do not work for the government and activities undertaken in the course of performing one's job.'"  Caraccilo v. Village of Seneca Falls, N.Y., 582 F. Supp. 2d 390, 410 (W.D.N.Y. 2008) (quoting Davis v. McKinney, 518 F.3d 304, 312-13 (5th Cir. 2008)) (additional quotation marks and citation omitted).

In Weintraub, the Second Circuit joined other circuits in declaring that "under the First Amendment, speech can be 'pursuant to' a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer."  Weintraub v. Board of Education, 593 F.3d 196, 203 (2d Cir. 2010) (relying on Renken v. Gregory, 541 F.3d 769, 773 (7th Cir. 2008) (professor's speech concerning grant administration, which was not part of his job responsibilities, was "for the benefit of students" and so "aided in the fulfillment of his

teaching responsibilities"); <u>Phillips v. City of Dawsonville</u>, 499 F.3d 1239, 1242 (11th Cir. 2007) ("a public employee's duties are not limited only to those tasks that are specifically designated"); <u>Williams v. Dallas Indep. Sch. Dist.</u>, 480 F.3d 689, 694 (5th Cir. 2007) (holding that athletic director's memorandum regarding use of school funds, although not within his job description, was not protected because "[a]ctivities undertaken in the course of performing one's job are activities pursuant to official duties"); <u>Brammer-Hoelter v. Twin Peaks Charter Acad.</u>, 429 F.3d 1192, 1204 (10th Cir. 2007) (teachers' speech concerning student behavior, curriculum, pedagogy, and classroom expenditure was made pursuant to their official job duties); <u>Freitag v. Ayers</u>, 468 F.3d 528, 536 (9th Cir. 2006) (prison guard's internal complaints about supervisor's failure to respond to inmate sexual behavior was made pursuant to official job duties)).

 <u>Weintraub</u> involved a school teacher who claimed that he was retaliated against for filing a formal grievance challenging the school administration's refusal to discipline a student for throwing a book at him during class.  <u>Weintraub</u>, 593 F.3d at 198-99.  The Second Circuit affirmed a decision granting summary judgment, finding that the teacher – "by filing a grievance with his union to complain about his supervisor's failure to discipline a child in his classroom" – "was speaking pursuant to his official duties and thus not as a citizen."  <u>Id.</u> at 201.  The Court found that plaintiff's speech was "pursuant to" his official duties because "it was 'part-and-parcel of his concerns' about his ability to 'properly execute his duties.'"  <u>Id.</u> at 202.

 Under <u>Weintraub</u>, the key question in determining whether Morey spoke as an employee or as a citizen is whether his speech was "'undertaken in the course of performing' . . . his primary employment responsibility" and was aired "in furtherance of

the execution of one of [his] core duties as [head custodian]."[7]  Id. at 203 (quoting

Williams, 480 F.3d at 693).  Here, there is no material issue of fact as to whether Morey's

expressed concerns about possible asbestos contamination at the high school were made

in furtherance of his core duties as head custodian at that school.

   While Morey's official duties did not include identifying or abating

asbestos, they did include cleaning, maintaining, and repairing the school building.  (Def.

Rule 56.1 Stat. ¶11)  Indeed, Morey's "core duty" was to maintain the school buildings

and grounds.  (See Ex. C at 30: 6-8, 31: 14-20)  Even when the evidence is considered in

the light most favorable to Plaintiff, it is clear that Morey was acting in furtherance of his

core duty when he asserted that the fallen insulation materials in the gymnasium might

contain asbestos and that the area should be tested to resolve that issue.  Custodial

workers regularly encounter substances and problems that they are not explicitly tasked

with cleaning or reporting.  This does not mean that they do not understand that their

duties include reporting dangerous substances and the safety issues they present to

administrative staff.

---

[7]  Plaintiff does not and could not legitimately contend that Judge Conner's decision on
the motion to dismiss resolves this issue.  While acknowledging that Morey expressed his
"concerns in the ordinary course of his duties as Head Custodian," Judge Conner's
analysis in his March 2007 decision focuses on whether Morey's speech addressed a
matter of public concern, and not whether Morey was speaking as a citizen or as an
employee of the School District.  Morey, 2007 WL 867203, at *28-*34.  Judge Conner
concluded that Morey's statements "directly touch upon the physical safety of school
children and personnel, and they are therefore of public concern and protected under the
First Amendment."  Id. at *30; see also id. at *34 ("plaintiff's statements regarding the
asbestos in the gymnasium are of public concern and are protected under the First
Amendment").  In light of the Second Circuit's 2010 decisions in Weintraub and Huth,
however, it has become clear that a searching inquiry concerning the citizen v. employee
question is a critical component in determining whether a plaintiff has engaged in
protected speech.  The fact that the plaintiff's speech addresses a matter of public concern
is not dispositive.

Morey was called about the fallen insulation in the gymnasium because it was his job, as head custodian, to clean and maintain the school building.  In that capacity, he went to the gymnasium, examined the fallen insulation, and communicated his observations and concerns about asbestos contamination to Ness, the Superintendent of Buildings.  (Def. Rule 56.1 Stat. ¶¶ 26-27)  Indeed, at his deposition, Morey testified that making his report to Ness "was protocol at the time."  (Ex. C at 66:15-17).  After Morey reported his conclusions to Ness, Morey duct-taped the remaining insulation.  The two men later inspected "the other roof drains in the area."  In speaking about the incident with Defendant Crowley, Morey commented, "I guess that the money the district spent for all my [asbestos management] licenses paid off."  (Id. at 69: 2-3, 72: 11-13)  When Morey decided that his concerns about possible asbestos contamination were not being addressed, he did not share those concerns publicly, but only pursued the matter internally, with Ness and Crowley.  (Pltf. Rule 56.1 Counter-Stat. ¶¶ 7-23)  In sum, all of the facts concerning the gym incident and its aftermath make plain that Morey was acting and speaking as an employee and not as a regular citizen.

The cases relied on by Plaintiff are either inapposite or have been superseded by Garcetti, Weintraub, and Huth.  Cioffi v. Averill Park Cent. Sch. Dist. Bd. Of Educ., 444 F.3d 158 (2d Cir. 2006), for example, was decided two months before Garcetti and thus fails to cite the current standard.  Indeed, Cioffi contains almost no discussion of whether the plaintiff's speech was made in furtherance of his duties as a public employee.

In Cioffi, the court found that a high school athletic director's letter to his supervisor complaining about how an incident of sexual harassment and hazing was

14

handled by the school district was a matter of public concern.  444 F.3d at 161-65.  Even if the holding had discussed the scope of the plaintiff's official duties, as the Second Circuit noted in Weintraub, "the speech at issue in Cioffi had been publically disclosed and the athletic director subsequently pursued the public controversy in a press conference," thus distinguishing that case from Weintraub as well as the instant case, where the plaintiff "never communicated with the public."  Weintraub, 593 F.3d at 204.

Plaintiff's reliance on Fierro v. City of New York, 591 F. Supp.2d 431 (S.D.N.Y. 2008), is equally flawed.[8]  In Fierro, the plaintiff alleged that he was retaliated against for refusing to obey his supervisor's order to submit false information to school administrators about two teachers at their school.  The court concluded that under Garcetti the plaintiff had stated a valid First Amendment retaliation claim, because in "refus[ing] [his supervisor's] instructions to engage in blatantly wrongful acts," Fierro engaged in protected speech.  Id. at 442.  The court noted that the circumstances were "patently distinguishable from Garcetti," because Garcetti was never asked or directed to commit wrongful acts.  Id. ("the Garcetti Court made clear that '[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen.'  Here, however, plaintiff's right to refuse to carry out wrongful acts falls squarely within those rights enjoyed by private citizens.  Plaintiff has an inviolable right to say 'no' when confronted with an instruction to commit acts that were not only clearly outside the scope of his

---

[8]  The District Court's determination in Fierro that the defendant was not shielded by qualified immunity was reversed and remanded by the Second Circuit.  The appeal did not deal with the issue of whether Fierro's speech was constitutionally protected.  Fierro v. City of New York, 341 Fed. Appx. 696, 698 (2d Cir. 2009)

duties but more importantly, may also have been improper or even unlawful.")  Here, Morey was simply asked to clean up fallen insulation in the gymnasium of the school where he served as head custodian.

In sum, there are no facts and there is no case law supporting Morey's argument that – in reporting his concerns about possible asbestos contamination – he was acting as a citizen rather than as an employee of the School District.  Although Morey's speech related to a matter of public concern, the concerns he expressed were in furtherance of his core employment responsibilities, which included cleaning and maintaining the high school building.  Accordingly, Morey did not engage in protected speech and he has no valid First Amendment retaliation claim.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is GRANTED.  The Clerk of the Court is directed to terminate the motion (Docket No. 15) and to close this case.  Any other pending motions are moot.

Dated: New York, New York          SO ORDERED.
       March 19, 2010

_____
Paul G. Gardephe
United States District Judge

16